IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JUSTIN ADKINS, et al.,

          Plaintiffs,

v.                                      CIVIL ACTION NO.  3:18-0321

CSX TRANSPORTATION, INC., et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is defendant CSX Corporation's ("CSX") Renewed Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 158. CSX argues its status as the parent company of defendant CSX Transportation, Inc. ("CSXT") is insufficient for the Court to exercise jurisdiction over it. The Court agrees and finds no basis for asserting personal jurisdiction over CSX. The Renewed Motion is therefore **GRANTED**.

**I. BACKGROUND**

The plaintiffs assert a series of claims arising out of their termination with rail carrier CSXT in Huntington, West Virginia. *See* ECF No. 93. The plaintiffs also name CSXT's parent company, CSX, as a defendant. In August 2018, CSX filed a motion to dismiss for lack of personal jurisdiction on the basis that CSX is separate from CSXT and does not have sufficient contacts with West Virginia. ECF No. 20. The Court denied the motion because the plaintiffs made a *prima facie* case for personal jurisdiction. ECF No. 48, at 5. The Court then entered a scheduling order that permitted CSX to raise its jurisdictional defense again after the completion of jurisdictional

discovery. ECF No. 53, at 1–2. Having completed jurisdictional discovery, CSX now moves again for dismissal for lack of personal jurisdiction. ECF No. 158.

## II. LEGAL STANDARD

A federal court sitting in diversity "has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (citation omitted). "Because the West Virginia long-arm statute is coextensive with the full reach of due process," these questions merge into one inquiry. *In re Celotex Corp.*, 124 F.3d 619, 627–28 (4th Cir. 1997). "A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

In this case, the plaintiffs seek to pierce the corporate veil between CSX and CSXT to impute the subsidiary's West Virginia contacts to its parent. The Court must therefore look to the substantive requirements for piercing the corporate veil under West Virginia law. *See Byard v. Verizon W. Va., Inc.*, No. 1:11CV132, 2012 WL 1085775, at *10 (N.D.W. Va. Mar. 30, 2012) (analyzing West Virginia's alter ego doctrine in the context of determining personal jurisdiction over a parent corporation). The law presumes that two separately incorporated businesses are separate entities. Syl. pt. 3, *S. Elec. Supply Co. v. Raleigh Cty. Nat. Bank*, 320 S.E.2d 515 (W. Va. 1984). However, a plaintiff may overcome this presumption and pierce the corporate veil "when the corporate form is interposed to perpetrate an intentional wrong, fraud or illegality." *Id.* at 521–

22. The Court may then disregard the corporate structure in order to "make a corporation liable for behavior of another corporation *within its total control*." *Id.* at 522 (emphasis added). In addition to evidence concerning the organizational relationship between the parent and subsidiary, courts must consider evidence "that a corporation attempted to use its corporate structure to perpetrate a fraud or do grave injustice on an innocent third party." *Id.* at 523. West Virginia courts apply this "complicated" doctrine "gingerly" on a "case-by-case" basis "with particular attention to factual details." *Id.* at 522–23.

The Supreme Court of Appeals of West Virginia has outlined eleven factors for courts to consider "in determining whether to assert personal jurisdiction over the parent company of a subsidiary doing business in West Virginia." *Bowers v. Wurzburg*, 501 S.E.2d 479, 490 (W. Va. 1998). These factors include:

1. Whether the parent corporation owns all or most of the capital stock of the subsidiary;
2. Whether the parent and subsidiary corporations have common directors and officers;
3. Whether the parent corporation finances the subsidiary;
4. Whether the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;
5. Whether the subsidiary has grossly inadequate capital;
6. Whether the parent corporation pays the salaries and other expenses or losses of the subsidiary;
7. Whether the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;
8. Whether in the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;
9. Whether the parent corporation uses the property of the subsidiary as its own;
10. Whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and
11. Whether the formal legal requirements of the subsidiary are not observed.

*Id.* (citation omitted). Now that jurisdictional discovery has occurred and the parties had the opportunity to present relevant evidence and argument, the plaintiffs bear the burden of establishing personal jurisdiction by a preponderance of the evidence. *See Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 197 (4th Cir. 2018); *James v. Subaru of Am., Inc.*, No. 1:19CV00021, 2020 WL 220093, at *3 (W.D. Va. Jan. 15, 2020).

### III. DISCUSSION

The plaintiffs argue several facts show CSX exercised total control over CSXT. ECF No. 164, at 7–11. They point out that CSXT is a wholly-owned subsidiary of CSX and the two entities share some common officers who are compensated by CSX. *Id.* at 8. The plaintiffs also argue CSX guarantees the debt of its subsidiary and CSXT provides extensive services to CSX under a Specialized Services Agreement. *Id.* at 5, 8–9. In addition, CSX uses some of CSXT's property, assets, and workforce. *Id.* at 9. This includes use of CSXT's private aircraft and the leasing of office space from CSXT for a submarket rate. *Id.* at 9–10. The plaintiffs further argue that a Strategic Management Services Agreement obligates CSXT to comply with business strategies developed by CSX. *Id*. Finally, the plaintiffs argue CSX and CSXT represent themselves as a consolidated entity, including on their websites for the public and investors. *Id.* at 10–11.

These facts fall far short of showing anything more than a typical parent-subsidiary relationship. As considered by the second *Bowers* factor, CSX and CSXT shared some common officers and directors during the relevant period. The two entities' 2018 Secretary of State filings show six individuals served as officers for both CSX and CSXT (assuming these officers did not change in between the two filings). ECF Nos. 25-1, 25-2; *see also* ECF No. 164-4. Even so, "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts."

*W. Va. Highlands Conservancy, Inc. v. Pub. Serv. Comm'n of W. Va.*, 527 S.E.2d 495, 502 (1998) (quoting *U.S. v. Bestfoods*, 524 U.S. 51, 69 (1998)). In other words, having common officers and directors is often necessary for piercing the corporate veil, but it is far from sufficient to invoke the doctrine. *See C M Corp. v. Oberer Dev. Co.*, 631 F.2d 536, 539 (7th Cir. 1980) ("Stock control and common officers and directors . . . are not sufficient by themselves . . . for such factors are common business practice and exist in most parent and subsidiary relationships."); *Haas v. Antero Res. Corp.*, No. 1:17CV108, 2018 WL 6596869, at *9 (N.D.W. Va. Dec. 14, 2018) (holding that wholly owning a subsidiary, some shared officers and directors, and the allegation of "significant overlap in corporate control" fall "woefully short" of plausibly supporting alter ego liability).

The plaintiffs also failed to show CSXT's directors and executives "[took] their orders from the parent corporation" instead of "act[ing] independently in the interest of the subsidiary" as considered under the tenth *Bowers* factor. 501 S.E.2d at 490. The simple fact that some directors and officers split their time between the two companies does not support alter ego liability, for it is a "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *Bestfoods*, 524 U.S. at 69 (citations omitted). Thus, courts "generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary." *Id.* (internal quotation marks and citations omitted). The plaintiffs produced no evidence to rebut this presumption.

Per the ninth *Bowers* factor, the plaintiffs argue CSX uses some of CSXT's property. ECF No. 164, at 9. However, the only examples the plaintiffs provide are that CSX leases office space from CSXT and that CSXT permits CSX to use its aircraft under the companies' Specialized Services Agreement. *Id.* This use of CSXT's property is negligible, especially considering that

CSXT holds billions of dollars in assets, including real estate, bridges, locomotives, and freight cars. ECF No. 163-1 ¶ 13. Shared office space does not show a subsidiary is an alter ego of the parent. *See, e.g., Tucker v. Thomas*, 853 F. Supp. 2d 576, 591 (N.D.W. Va. 2012) (holding that an overlap in ownership and management and a shared office space and telephone number did not plausibly support alter ego liability); *EEOC v. Bass Pro Outdoor World, LLC*, No. 4:11-CV-3425, 2012 WL 13040407, at *3 (S.D. Tex. Oct. 23, 2012) (holding that common ownership, a shared corporate headquarters, and shared officers and directors did not establish an alter ego relationship). And, CSX does not freely use CSXT's aircraft as if CSX owned the aircraft. Rather, access is provided for in the companies' Strategic Management Services Agreement to "enable [CSX] to discharge its obligation in providing Strategic Management Services to [CSXT] without incurring greater cost." ECF No. 164-2, at 3. CSX's use of the aircraft is therefore part of an exchange of services typical of a parent and subsidiary, not indicative of a parent unconditionally controlling its subsidiary's assets.

 As the plaintiffs argue, CSXT provides many services to CSX. *See* ECF No. 164, at 4–5. The companies' Specialized Services Agreement describes the provision of accounting, environmental, financial, human resources, legal, and other services. ECF No. 164-3. However, the provision of some services by a subsidiary to a parent is not unique and does not necessarily support piercing the corporate veil. Rather, according the seventh *Bowers* factor, the question is whether the subsidiary "has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation." 501 S.E.2d at 490. Here, CSXT has significant business beyond CSX. ECF No. 158-1 ¶ 11. In 2018, CSXT had approximately $12.2 billion in revenue, while CSX paid only $5.57 million under the Specialized Services Agreement. *Id.*; ECF No. 163-1 ¶ 6. CSXT also holds considerable assets independent of CSX, including real

estate, bridges, locomotives, and freight cars. ECF No. 158-1 ¶ 13. Thus, the receipt of some business from the companies' Specialized Services Agreement does not support holding CSX liable here.

The plaintiffs' main argument is that a Strategic Management Services Agreement permits CSX to set CSXT's strategy and prohibits CSXT from deviating from that strategy. ECF No. 164, at 9–10. However, this Agreement does not evidence the kind of "total control" that would justify holding CSX liable. As the United States Supreme Court and the Supreme Court of Appeals of West Virginia have explained, "activities which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures do not indicate that the parent corporation is in fact controlling the subsidiary." *W. Va. Highlands Conservancy, Inc.*, 527 S.E.2d at 502 (quoting *Bestfoods*, 524 U.S. at 72) (internal quotation marks omitted). Thus, parent companies can set the corporate strategy of their subsidiaries without giving rise to alter ego liability when the subsidiary maintains control of day-to-day operations. *E.g., Anwar v. Dow Chem. Co.*, 876 F.3d 841, 850 (6th Cir. 2017) (holding that parent's "macromanagement" of subsidiary is insufficient for alter ego liability); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1074–75 (9th Cir. 2015) (rejecting alter ego liability where subsidiary handled its day-to-day operations even though the parent company controlled the subsidiary's budget, approved large purchases, and set general human resource policies); *Byard*, 2012 WL 1085775, at *10–11 (holding that a parent company's "Code of Conduct" outlining general corporate policy for its subsidiary could not justify piercing the corporate veil); *see also Company*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "holding company" as one that generally "confin[es] its role to owning stock and supervising management" without "participat[ing] in making day-to-day business decisions").

The companies' Strategic Management Services Agreement evidences only the kind of "macromanagement" typical of a parent-subsidiary relationship. The agreement is only fourteen pages long and describes CSX's provision of management services to CSXT in the broadest of terms. *See* ECF No. 164-2. For example, CSX agrees to "create long-term value and growth by identifying [CSXT's] longterm needs; establishing one or more plans to address those needs; and work with [CSXT's] management to execute those plans." *Id.* at 6. In another portion, CSX agrees to the "coordination of human resource policies; overseeing compliance with labor laws; evaluating managerial restructuring; creation of longterm incentive plans; and strategizing collective bargaining." *Id.* Nothing in the agreement indicates CSX goes beyond the development of strategy to control the day-to-day operations of CSXT. To the contrary, this intercompany contract shows CSXT and CSX closely adhered to the formalities of corporate separateness when establishing this provision of management services. *See Special Indus., Inc. v. Zamil Grp. Holding Co.*, 578 F. App'x 325, 333 (5th Cir. 2014) ("[F]ormal contractual relationships in the form of service, patent, trademark, licensing, and interest-bearing loan agreements, like the ones [the parent] has here with its subsidiaries, could be more indicative of separateness than unity."); *In re Joseph Walker & Co., Inc.*, 522 B.R. 165, 192 (Bankr. D.S.C. 2014) ("[F]ar from suggesting any domination or control of a corporate subsidiary, intercompany transactions may establish the independence of corporate entities."). Without additional evidence showing CSX exercised control over CSXT's operations, the Strategic Management Services Agreement fails to support holding CSX liable.

Finally, the plaintiffs' argument that CSX and CSXT represent themselves as a consolidated entity also does not support alter ego liability. *See* ECF No. 164, at 10–11. Specifically, the plaintiffs argue CSX's main website and investors website do not distinguish

between the two companies. *Id.* This is false. Both websites link to a "corporate structure" page that explains: "CSX Corporation is the parent company of several direct and indirect wholly-owned subsidiaries, including: [CSXT]. Each subsidiary is a separate and distinct company." *Corporate Structure*, CSX, https://www.csx.com/index.cfm/about-the-site/corporate-structure/ (last visited June 9, 2020). The plaintiffs provided no evidence that earlier versions of the websites did not make this distinction. CSX's investors website also includes copies of CSX's annual Form 10-Ks and CSXT's Class 1 Railroad Annual Reports, each of which distinguish between the companies. *See Annual Reports*, CSX, https://investors.csx.com/financials/annual-reports/default.aspx (last visited June 9, 2020). The plaintiffs contend that CSX's first quarter financial report for 2020 fails to distinguish between CSX and its subsidiaries. *See* ECF No. 164-5. However, the report is meant to provide a concise summary and clearly instructs readers on the first page to read the report "in conjunction with the Company's most recent Annual Report on Form 10-K" among other public filings. *Id.* at 3. The report also refers readers to CSX's website for "[m]ore information about CSX Corporation *and its subsidiaries*." *Id.* at 4 (emphasis added). Given these statements, it cannot be said that CSX describes CSXT as a division of itself or that CSX refers to CSXT's business responsibility as its own as considered by the eighth *Bowers* factor. *See* 501 S.E.2d at 490.

In sum, the plaintiffs have failed to offer any significant evidence that CSX exercised total control over CSXT and did so to "perpetrate an intentional wrong, fraud or illegality." *S. Elec. Supply Co.*, 320 S.E.2d at 521–22. The companies' corporate and financial structure, shared officers and directors, exchange of services, setting of strategy, and public presentation show nothing more than a typical parent-subsidiary relationship. West Virginia law mandates that the corporate form should "never be disregarded lightly," and this case does not present exceptional

circumstances. *Dallas Nat'l Ins. Co. v. Owner's Sol., Inc.*, No. 2:13-CV-10780, 2014 WL 12744644, at *2 (S.D.W. Va. Mar. 10, 2014). The plaintiffs' attempt to pierce the corporate veil and impute CSXT's West Virginia contacts to CSX is unfounded.

## IV. CONCLUSION

The Court therefore **GRANTS** CSX's Renewed Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 158, and **DISMISSES** CSX as a party to this suit. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: June 11, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE