IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

JUSTIN ADKINS, et al.,

                     Plaintiffs,

v.                                            Civil Action No. 3:18-CV-00321

CSX TRANSPORTATION, INC., et al.,

                     Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIM UNDER THE FMLA**

      COME NOW Defendants, by counsel, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and hereby move for summary judgment as to Plaintiffs' claim under the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA"), as set forth in Count IV of the Third Amended Complaint. Defendants are entitled to summary judgment on Plaintiffs' FMLA claim because CSXT's investigation of suspected fraud constitutes a legitimate, nonretaliatory reason for Plaintiffs' terminations and there is no evidence on which a reasonable jury could find that this reason was pretextual. Further, summary judgment as to punitive damages is proper because punitive damages are not recoverable under the FMLA. Therefore, for those reasons and for the reasons provided *infra*, Defendants' Motion for Summary Judgment should be granted in its entirety.

**I.    BACKGROUND**

      The 56 Plaintiffs in this matter were terminated from CSXT after it was determined that they, *en masse*, submitted Certificates of Ongoing Illness or Injury ("COII") from two chiropractors in violation of CSXT's operating rules and ethics policies. Plaintiffs are upset with

the outcome of the on-property investigations and subsequent discipline they received and filed the instant action on February 15, 2018 against CSXT, CSXT's Chief Medical Officer and eight CSXT managers in their personal capacities who were present at the investigative hearings. Plaintiffs' Third Amended Complaint alleges ten causes of action. (*See* Third Am. Compl., [ECF 93]). These causes of action consist of alleged violations of: ERISA § 510, Section 504 of the Rehabilitation Act, the West Virginia Human Rights Act – disability discrimination, medical inquiry, and aiding and abetting, FMLA, FRSA, and five common law tort claims for defamation, invasion of privacy, tortious interference, intentional infliction of emotional distress, and wrongful discharge. *See id.*

CSXT required COIIs submitted by medical providers in order for employees to take off work for injury or illness. (COIIs, attached as Exhibit 2). Of the current group of 56 Plaintiffs[1], CSXT received 56 COIIs between May and July of 2017—5 in May 2017, 30 in June 2017, and 21 in July 2017. *See id.* All 56 COIIs were signed by two chiropractors, 11 from Daniel Carey, II, DC and 45 from Shannon Johnson, DC. *See id.* All Plaintiffs presented to these two chiropractors with claims of some combination of a soft-tissue injury to the back, neck, or shoulder from an off-the-job incident. *See id.* The vast majority of the COIIs took Plaintiffs off of work for precisely two months, with the remaining being greater than two months. *See id.*

Dr. Craig Heligman, MD, Chief Medical Officer for CSXT, noticed the high number of COIIs submitted within weeks of each other from the same two providers, and their close similarity. *See* (July 14, 2017 Letter, attached as Exhibit 8). The sheer volume, the fact that they all came in within eight weeks of one another, that all took Plaintiffs off of work for precisely eight weeks or even longer, and were all from the same two chiropractors, raised Dr. Heligman's

---

[1] There were additional COIIs submitted which resulted in investigations and terminations of employees that are not Plaintiffs in this matter but are not addressed in this Motion.

suspicion that the COIIs were being submitted improperly. *See id.* As a result of his opinion that these employees may be attempting to fraudulently obtain extended benefits, Dr. Heligman notified the Railroad Retirement Board ("RRB") Office of Inspector General by letter and requested an investigation because "the timing of these alleged injuries . . . is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers." *See* (July 14, 2017 Letter, attached as Exhibit 8; July 21, 2017 Letter, attached as Exhibit 9; July 28, 2017 Letter, attached as Exhibit 10). Dr. Heligman copied this letter to Aetna Inc., Highmark Blue Cross Blue Shield, United Health Care, the Ohio State Chiropractic Board, and the Kentucky Board of Chiropractic Examiners. *See id.* Dr. Heligman identified the employees to the foregoing entities to advise them it was his opinion that the circumstances were suspicious and perhaps involved fraudulent behavior that needed to be investigated. *See id.*

Every Plaintiff had a CBA in place when the charges were made, the on-property investigations were held and the termination decisions occurred. (Collective Bargaining Agreements, attached as Exhibits 173–177). The CBAs include provisions for the procedures that investigations must follow, and appeals processes to which the employees are entitled. *See* (Exhibit 173 at Bates No. CSXT(Adkins) 020975–76; Exhibit 174 at Bates No. CSXT(Adkins) 021332–34; Exhibit 175 at Bates No. CSXT(Adkins) 021664–66; Exhibit 176 at Bates No. CSXT(Adkins) 021804–07; Exhibit 177 at Bates No. CSXT(Adkins) 021962–65.) Every Plaintiff was entitled to a charge letter, an impartial investigative hearing, and an appeal of the ultimate discipline decision. *See id.* All Plaintiffs received these procedural requirements under the CBAs. *See* (Charge Letters, attached as Exhibit 1; Hearing Transcripts, attached as Exhibits 67-122; and Public Law Board Decisions, attached as Exhibit 6). CSXT sent a charge letter to every Plaintiff informing them they would need to attend a formal investigative hearing. (Charge Letters, attached

3

as Exhibit 1). The charge letters also detailed the rights of each Plaintiff under the CBA to be represented by a union representative, as well as each Plaintiff's ability to present witnesses and evidence. *See id.* Each Plaintiff appeared for his or her investigative hearing, was represented by a union representative, and was given the opportunity to introduce evidence and cross-examine witnesses. *See* (Hearing Transcripts, attached as Exhibits 67–122).

After the on-property hearing, each Plaintiff was sent a letter detailing the findings from the hearing and the disciplinary measures being taken by CSXT. *See* (Termination Letters, attached as Exhibit 7). Each Plaintiff in this action received a discipline letter terminating his or her employment. *Id.* The termination letters informed each Plaintiff that he or she was terminated for a violation of CSXT Operating Rule 104.2a and Code of Ethics Policy. *See id.* Every Plaintiff had the right to an appeal internally at CSXT through the CBA grievance process, which culminated in an external process involving the Public Law Board, a special adjustment board comprised of a carrier representative, an employee representative, and a neutral decisionmaker. *See* (Public Law Board Decisions, attached as Exhibit 6); *see also* 29 CFR § 1207.1 (establishing Public Law Board as forum for on-property appeals). Most Plaintiffs, through their respective unions, submitted an appeal to the Public Law Board. *See* (Public Law Board Decisions, attached as Exhibit 6). Of the Plaintiffs who chose to appeal their terminations the Public Law Board determined that only four should be reinstated. *See id.* The Plaintiffs' claims in the instant action arise from these terminations and the procedure that was followed leading up to the terminations.

## II. ARGUMENT

### A. Standard of Review

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A court will grant

summary judgment when, after viewing all underlying facts in favor of the nonmoving party, it is clear that no reasonable juror could return a verdict for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *See id.*

The nonmoving party is required to produce evidence and set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor[.]" *Dawson v. Kokosing Const. Co., Inc.*, 3:08-0287, 2009 WL 1176447 (S.D. W. Va. Apr. 29, 2009) (Chambers, J.) (citing *Anderson*, 477 U.S. at 256). "Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, an evidentiary showing sufficient to establish that element." *Id.* (citing *Celotex*, 477 U.S. at 322-23). "A mere scintilla of evidence supporting the case is insufficient." *Cornell v. Gen. Elec. Plastics*, 853 F. Supp. 221, 226 (S.D. W. Va. 1994) (citations omitted). Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp*., 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). It is the court's job to determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### B. Defendants are entitled to summary judgment as to Plaintiffs' FMLA claims.

Under the FMLA, an eligible employee is entitled to 12 weeks of leave during any twelve-month period for a qualified medical condition. *See Ennis v. City Holding Co.*, 2:12-cv-03956, 2012 WL 6651925 (S.D. W. Va. Dec. 20, 2012) (citing 29 U.S.C. § 2612). The FMLA further prohibits employers from interfering with, and/or retaliating against, an employee's use or attempted use of leave time. *Id.* § 2615(a)(1)-(2). In order to make a *prima facie* discrimination claim, the plaintiff must show that "he is engaged in protected activity [under the FMLA], that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998); *see also Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006). Likewise, to establish a *prima facie* case of FMLA retaliation, a plaintiff must demonstrate that "(1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) there was a causal link between the two events." *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 429 (4th Cir. 2015) (internal quotation marks omitted). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to provide a legitimate, nonretaliatory reason for taking the employment action at issue. *Id.* If the defendant does so, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. *Id.* As discussed below, Plaintiffs' FMLA claims fail because (i) the undisputed evidence shows Defendants had a legitimate, nonretaliatory reason for terminating the Plaintiffs, and (ii) there is no evidence on the record from which a reasonable jury could find that Defendants' reason for terminating the Plaintiffs was pretextual.

> **i.** **Defendants have satisfied their burden to show CSXT's investigation of suspected fraud constitutes a legitimate, nonretaliatory reason for Plaintiffs' termination—not causally connected to protected activity.**

Plaintiffs allege in their Third Amended Complaint that the Defendants violated the FMLA because Plaintiffs had "serious medical conditions," that CSXT was aware of their need for leave related to these conditions, and that CSXT was on notice that Plaintiffs needed leave. Compl.¶¶ 2295-2297, 2298-2301. Plaintiffs claim that when CSXT refused to accept COIIs from the chiropractors at issue and after CSXT terminated them, that CSXT violated their rights under the FMLA. *See id.* In doing so, Plaintiffs allege that CSXT restrained, denied, and willfully interfered with their exercise of their FMLA rights and denied them benefits of protection under the FMLA. *Id.*

Importantly, despite Plaintiffs' allegations that they were denied FMLA leave, none of the Plaintiffs allege in the Third Amended Complaint that they ever sought FMLA leave in the first place. *See generally id.* Furthermore, the record shows that CSXT had a legitimate, nonretaliatory reason for terminating the Plaintiffs: a genuine belief that the employees were not seeking leave for a legitimate purpose. The FMLA does not prohibit employers from enforcing policies to prevent fraud or abuse. *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 206 (4th Cir. 2016).

In *Sharif*, the eponymous employee travelled out of the country on an extensive vacation. *Id.* at 201. Sharif had assembled about 20 days of time off from March 16 to April 4, 2014; the time off did not include, however, a short two-day period from March 30 to 31 when he was assigned to work customer service in the United Airlines lounge. *Id.* Sharif had been diagnosed with an anxiety disorder in 2009, and United Airlines had approved his request to take intermittent leave under the FMLA to handle panic attacks. *Id.* Sharif took FMLA leave on March 30—the only shift he was scheduled to work in the midst of his extensive time off. *Id.* When United Airlines' Human Resources department became aware of this suspiciously-timed activity, it began an investigation of Sharif's FMLA claim. *Id.* at 202. After questioning him, United Airlines

ultimately notified Sharif of its intention to discharge him for fraudulently taking FMLA leave and for making dishonest representations during the ensuing investigation. *Id.* Sharif subsequently sued for FMLA retaliation. *Id.* at 203. The district court granted summary judgment in favor of United Airlines, finding that Sharif did not produce sufficient evidence of pretext to survive summary judgment. *Id.* at 204.

On appeal the U.S. Court of Appeals for the Fourth Circuit agreed, finding that "[e]ven drawing all reasonable inferences in favor of Sharif as the nonmoving party . . . [he] has failed to create an issue of triable fact that the explanation United Airlines provided for his discharge was a pretext for retaliation for taking FMLA leave." *Id.* at 201. The Fourth Circuit reasoned that "[t]o hold otherwise would disable companies from attaching any sanction or consequence to the fraudulent abuse of a statute designed to enable workers to take leave for legitimate family needs and medical reasons." *Id.* (emphasis added). The Fourth Circuit found it particularly telling that "Sharif provided the company with no evidence to support his claim aside from his own shifting statements" and concluded that "[i]t seems perfectly logical for United Airlines to conclude that Sharif did not want to interrupt his . . . vacation to come back for one day of work." *Id.* at 205.

Here, Plaintiffs seek to impose a standard that requires an exhaustive undertaking by the employer resulting in a "smoking gun" with near-perfect evidence of fraud prior to beginning an investigative/disciplinary process. However, that is not the standard at all. The *Sharif* court did not require the employer to produce a "smoking gun" conclusively proving that the employee was not seeking leave for a legitimate purpose; rather, the employer's honest belief of potential fraud based upon the employee's suspiciously-timed activity was sufficient. *Id.* at 201. To hold otherwise would disable companies from curbing fraud and abuse. *Id.*

The facts in the instant matter are strikingly similar to those in *Sharif*. Like Sharif, who conveniently took FMLA leave to bridge a two-day gap in an extensive vacation, here it was "perfectly logical" for CSXT to conclude that the Plaintiffs' timing and similar nature of their injuries was highly suspicious and indicative of fraud. *Id.* at 205. In the early summer of 2017, the CSXT medical department received an unusually large number of COII forms during a short period of time from only two chiropractors; taking an inordinately large number of employees out of work for precisely two months; for similar soft-tissue injuries to the back, neck, or shoulder; all from similar at-home accidents. Furthermore, while the employees had an opportunity to present evidence in support of their injury claims during the investigative hearings and throughout the Collective Bargaining Agreement appeal and arbitration process as well as before this Court, like Sharif they produced little more than their "own shifting statements[.]" *Id.* at 205. Because this suspicion of fraud constitutes a legitimate, nonretaliatory reason for Plaintiffs' termination—not causally connected to protected activity—Defendants have satisfied their burden under the burden-shifting framework set forth in *Adams*, 789 F.3d at 429, *supra*.

   **i.**  **Summary Judgment is proper because there is no evidence from which a reasonable jury could find CSXT's legitimate, nonretaliatory reason for Plaintiffs' termination was pretextual.**

There is simply no evidence from which a reasonable jury could find that Defendants' reason for terminating the Plaintiffs was pretextual because Plaintiffs' own Complaint indicates Defendants believed the Plaintiffs were not seeking medical leave for an approved purpose. Plaintiffs maintain that the submission of the COIIs was not suspicious and testified in their depositions that CSXT and its management employees were wrong in their belief that the Plaintiffs were dishonest. Essentially, they disagree with the outcome and fairness of CSXT's investigation. *See, e.g.*, Stinnett Dep. (Mar. 2, 2021), at 59:23—63:3, attached as Exhibit 59. This falls far short

9

of showing the requisite pretext to establish an FMLA violation. Even assuming that the Plaintiffs were correct—which Defendants dispute—an employer does not interfere with the exercise of FMLA rights where it terminates an employee based upon the employer's honest belief that the employee is not taking leave for an approved purpose. *Mercer v. Arc of Prince Georges Cty., Inc.*, 532 F. App'x 392, 396 (4th Cir. 2013) (citing *Thorneberry v. McGehee Desha Cty. Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005)). To make a showing of pretext, the employee must do more than demonstrate "the unexceptional fact that []he disagrees with the outcome of [the] investigation." *Mercer*, 532 F. App'x at 396. "In reviewing whether an employer's decision is unlawful, the Court's task is not to decide whether the reason for termination of employment was wise, fair, or even correct, ultimately, so long as it truly was the reason for the decision." *Id.* at 399 (internal citation omitted). *See also Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 681 (7th Cir. 1997) (stating that the employer "need not conclusively prove that [the employee] had misused her leave; an honest suspicion will do").

In *Kariotis*, for example, the eponymous employee underwent knee replacement surgery and went on disability leave. Kariotis's doctor initially expected she would need 10 weeks to recover; however, her return-to-work date was extended several times by her doctor, who determined she required two post-operative "knee manipulations." *Id.* at 674. After more than three months had elapsed, the company's human resources manager became concerned because Kariotis's claimed disability was inconsistent with observations made by company employees. *Id.* The HR manager hired a private investigator who videotaped Kariotis walking, driving, and shopping. *Id.* at 675. The company then terminated Kariotis; the termination letter stated that she was being discharged for cause because she dishonestly had claimed disability benefits. *Id.* Kariotis sought reinstatement and her physician wrote a letter in support of her claim, but her

termination was upheld internally. Kariotis then brought suit for, among other things, FMLA violations. Kariotis was critical of the company's failure to have its own doctor examine her and for failing to reach out to Kariotis's physician who scheduled the post-operative manipulations and extended her leave. *Id.* The district court nonetheless granted summary judgment to the employer and dismissed Kariotis's FMLA claim. *Id.* at 680-81.

On appeal, the U.S. Court of Appeals for the Seventh Circuit affirmed summary judgment, finding that it was enough that the employer "demonstrated that it honestly believed [Kariotis] was not on a legitimate FMLA leave," *i.e.*, that it "suspected Kariotis was not using her leave for [the FMLA's] 'intended purpose' of recovering from knee surgery." *Id.* at 681. The Seventh Circuit noted Kariotis's objection to the fairness of the investigation, stating that "[o]bjectively speaking, their investigation left something to be desired [because] [r]ather than approaching Kariotis or her doctor, they hired a company to videotape her movements while off-duty." *Id.* at 675. Nevertheless, because the employer suspected Kariotis committed fraud while on duty, the Seventh Circuit concluded that the employer "need not conclusively prove that Kariotis had misused her leave; an honest suspicion will do." *Id.* at 681.

Here, the record shows that Defendants believed the Plaintiffs were not submitting COIIs for an approved purpose. The language of Plaintiffs' own Complaint is clear: Plaintiffs allege that Defendants *believed the COII forms were fraudulent*. Plaintiffs allege that "the disciplinary investigation further revealed that <u>the defendants believed</u> that more than sixty CSXT employees submitted COII forms from Doctors Johnson and Carey in order to obtain extended benefits because they were due to be furloughed and/or have their jobs abolished." Compl. ¶ 1248 (emphasis added). *See also id.* ¶ 1250 ("Dr. Heligman <u>doubted</u> the motivation behind the submitted medical documentation."); *id.* ¶ 1247 (employees were to be investigated for "<u>potential</u>

11

fraud"). Accepting Plaintiffs' allegations as true, it is clear that CSXT and its management employees were investigating what they perceived to be fraudulent activity.

Whether Plaintiffs disagree with this belief, or even whether Defendants were ultimately factually correct in this belief, is irrelevant under the applicable legal standard. Like the employee in *Kariotis*, Plaintiffs take issue with CSXT's failure to have Dr. Heligman examine them or conducting a more in-depth investigation; Plaintiffs essentially argue that CSXT should have found conclusive proof of fraud prior to referring the matter to the appropriate agencies for external investigation or to begin the disciplinary process. Brandon Adkins Dep. (July 31, 2020), at 142:16—143:9, attached as Exhibit 12 (CSXT "should have been a little more elaborate as far as . . . investigating me"); Brown Dep. (Aug. 10, 2020), at 91:16-24, attached as Exhibit 21 (CSXT "should have said you have to go to another doctor, or even the railroad doctor that they pick, and send them to somebody else and give them a physical"); Mosteller Dep. (Aug. 11, 2020), at 88:3-12, attached as Exhibit 44 (CSXT should have "[g]ot all the facts"); *See, e.g.*, Stinnett Dep. (Mar. 2, 2021), at 59:23—63:3, attached as Exhibit 59 ("If I had been guilty, then the case should have been proven against me . . . . There was – an investigation – the only thing they ever said was we feel or we assume."); Witt Dep. (Aug. 14, 2020), at 115:16-19, attached as Exhibit 65 (CSXT "should've investigated a little more"). However, as the *Kariotis* court demonstrated, that is not the required showing. The Seventh Circuit noted Kariotis's objection to the fairness of the investigation, stating that "[o]bjectively speaking, their investigation left something to be desired [because] [r]ather than approaching Kariotis or her doctor, they hired a company to videotape her movements while off-duty." *Id.* at 675. Nevertheless, because the employer suspected Kariotis committed fraud while on duty, the Seventh Circuit concluded that the employer "need not conclusively prove that Kariotis had misused her leave; an honest suspicion will do." *Id.* at 681.

12

Here, just as in *Kariotis*, it does not matter whether the investigation was "perfect," or whether the reason for Plaintiffs' termination was "wise, fair, or even correct," because as Plaintiffs' own Complaint alleges, suspected fraud was the impetus for the investigation and subsequent termination. Plaintiffs simply cannot make a showing of pretext on this record. Accordingly, Plaintiffs' FMLA claim fails as a matter of law, and Defendants[2] are entitled to summary judgment.

### C. Summary Judgment is proper as to Plaintiffs' punitive damages claim because punitive damages are not recoverable under the FMLA.

Finally, Plaintiffs are not entitled to punitive damages because the FMLA does not provide for punitive damages. *Vandevander v. Verizon Wireless, LLC*, 149 F. Supp. 3d 724, 732 (S.D. W. Va. 2016). *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 771 (M.D.N.C. 2000) is illustrative of this general principle. In *Keene*, the plaintiff filed suit under the FMLA alleging that his employer, the U.S. Postal Service, interfered with his FMLA rights by refusing to allow him to take time off for his sleep apnea. The district court granted the defendants' motion to strike plaintiff's punitive damages claim, concluding that "the FMLA does not allow punitive damages" and noting that "[m]ost of the other courts addressing the issue," including courts within the Fourth Circuit, "have concluded that punitive damages are not available under the FMLA." *Id.* at 773 (collecting cases). Plaintiffs' punitive damages claim under the FMLA is simply a nonstarter, and as a matter of law Defendants are entitled to summary judgment.

---

[2] In addition to their claim against CSXT, Plaintiffs also allege an FMLA claim against certain individuals who were employed by CSXT during the relevant time period: CSXT Chief Medical Officer Craig S. Heligman, M.D., and eight other individuals who served as charging or hearing officers during Plaintiffs' investigative hearings—Gus Thoele, Curt Shogren, Milton Storm, Delando Jones, Tom DeAngelo, Shawn Lusk, Elizabeth Creedon, and Kenneth Ray Emerson. Personal liability under the FMLA requires a showing that the individual exercised control over the employee's FMLA rights. See Miller v. Federal Exp. Corp., No. 2:12-cv-03461, 2014 WL 2117098 at *9 (S.D. W. Va. May 21, 2014) (granting summary judgment to plaintiff's manager when she was not the person who decided whether to place the plaintiff on leave or whether to eliminate plaintiff's position and therefore could not have made any decisions concerning the plaintiff's FMLA rights). Here, the Plaintiffs do not allege, and cannot point to any evidence, that the individually-named Defendants had control over any employment decisions regarding Plaintiffs on behalf of CSXT. See Compl. at ¶¶ 2294-2301. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiffs' FMLA claim should be granted with respect to the individually-named defendants.

### III. CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Defendants and dismiss Plaintiffs' FMLA claims with prejudice.

Respectfully submitted,

By */s/Melissa Foster Bird*
Of Counsel

Melissa Foster Bird, Esquire
Megan Basham Davis, Esquire
Nathan R. Hamons, Esquire
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
949 Third Avenue, Suite 200
Huntington, West Virginia 25719
Phone: (304) 526-3503
Fax: (304) 526-3599
melissa.fosterbird@nelsonmullins.com
megan.davis@nelsonmullins.com
nathan.hamons@nelsonmullins.com

**COUNSEL FOR DEFENDANTS**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT HUNTINGTON

JUSTIN ADKINS, et al.,

           Plaintiffs,

v.

CSX TRANSPORTATION, INC., et al.,

           Defendants.

Civil Action No. 3:18-CV-00321
Hon. Judge Robert C. Chambers

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 13th day of May, 2021, a copy of the foregoing was served upon counsel of record by electronically filing the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Gregory G. Paul, Esq.
**Morgan & Paul, PLLC**
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
Tel: (844) 374-7200
Fax: (888) 822-9421
gregpaul@paullaw.com

Kenneth R. Reed, Esq.
**Kenneth R. Reed, Attorney PSC**
241 Elm Street
Ludlow, KY 41016
Tel: (859) 331-4443
Fax: (859) 291-2226
kenreedatty@gmail.com
Applicant for *Pro Hac Vice*

Jeff R. Dingwall, Esq.
**Eight & Sand**
550 West B Street
Fourth Floor
San Diego, CA 92101
Tel: (619) 796-3464

Fax: (619) 717-8762
jeff@eightandsandlaw.com
*Pro Hac Vice*

C. Kiel Garella, Esq.
**Garella Law, P.C.**
409 East Boulevard
Charlotte, NC 28303
Tel: (980) 321-7934
Fax: (704) 990-6734
kiel@gljustice.com
*Pro Hac Vice*

Mark F. Underwood, Esq.
John Patrick L. Stephens, Esq.
**Underwood Law Office, Inc.**
923 3rd Ave
Huntington, WV 25701
Tel: (304) 522-0508
munderwood@underwoodlawoffices.com
pstephens@underwoodlawoffices.com
*Local counsel for Plaintiffs*


                    **CSX TRANSPORTATION, INC., et al.**

                    */s/ Melissa Foster Bird*