**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

JUSTIN ADKINS, et al.,

Plaintiffs,

v. CIVIL ACTION NO. 3:18-0321

CSX TRANSPORTATION, INC., et al.,

Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion for Summary Judgment, ECF No. 360. Defendants filed a "Memorandum of Law in Support of Their Motion for Summary Judgment on Plaintiffs' Claim for Wrongful Discharge and Plaintiffs' Claims under ERISA, the Rehabilitation Act, and the West Virginia Human Rights Act." ("*Defs.' Mem.*"). ECF No. 362. Plaintiffs filed a response in opposition ("*Pls.' Resp.*"), ECF No. 397, and Defendants' filed a reply memorandum ("*Defs.' Reply*"), ECF No. 415. This Order addresses only Plaintiffs' wrongful discharge claim. For the reasoning provided herein, Defendants' Motion is **GRANTED, in part**,[1] and Plaintiffs' wrongful discharge claim is **DISMISSED**.

## I. BACKGROUND

Each of the 56 Plaintiffs in this case were employees of CSX Transportation. Between May and July of 2017, all of the Plaintiffs visited one of two chiropractors—Shannon M. Johnson, D.C. ("Dr. Johnson") or Daniel J. Carey, II, D.C. ("Dr. Carey"). *COII*, ECF No. 378 at 2–78. The

[1] Because of the unusually large size of the Plaintiff class in this case, Defendants have filed one "master" motion for summary judgment and multiple individual memoranda as to each of the counts they seek a ruling upon. The Court finds that a single order addressing all of the arguments would be unwieldy and unpractical. Accordingly, the Court will issue separate orders on the individual counts.

chiropractors placed all of the Plaintiffs on medical restrictions and signed a Certificate of Illness and Injury ("COII")[2] for each of them. *Id.* All of the COII listed soft-tissue injuries to the back, neck, or shoulder, and all but one of the injuries complained of occurred when the Plaintiffs were off duty. *Id.* Each of the COII indicated that the Plaintiffs should remain off work for eight or more weeks. *Id.*

CSXT's Chief Medical Officer, Dr. Craig Heligman, "noticed the high number of COIIs submitted within weeks of each other from the same two providers, and their close similarity." *Defs.' Mem.* 3. He became concerned that the COII were improperly submitted, and he notified the Railroad Retirement Board, Plaintiffs' medical benefits provides, and the chiropractic boards of Ohio and Kentucky of his concerns. *Id.*; *July 14, 2017 Letter*, ECF No. 370-2.

Soon after Dr. Heligman wrote the July 14th letter, each of the Plaintiffs received a "charge letter," informing them that they were "being held out of service" pending a formal investigation into their conduct. *Charge Letters*, ECF No. 360-1. They were informed that formal investigative hearings would be held at which they could be represented by a union representative in accordance with their collective bargaining agreements and that they could present witnesses in their defense. *Id.* Those hearings were held, *Hearing Trs.*, ECF No. 370-61–116, and Defendants ultimately concluded that Plaintiffs had violated CSXT's Operating Rules and Code of Ethics, *Termination Letters*, ECF No. 360-7. Accordingly, all 56 Plaintiffs were terminated from their employment.

On February 2, 2018, Plaintiffs filed a lawsuit alleging that the Defendants were liable for violating federal and state laws and for committing multiple torts. *See* ECF No. 1. The now operative Third Amended Complaint includes the following counts: (1) the Employment

---

[2] A COII is the form CSXT requires an employee's medical provider to complete before an employee can be taken off work for an illness or injury. *Defs.' Mem.* 2. The form includes basic identifying information about the employee and has places for the medical professional to document his or her findings, diagnoses, treatment plan, the employee's duration of care with the provider, and the time frame in which the employee is unable to work.

Retirement Income Security Act of 1974, (2) the Rehabilitation Act, (3) the West Virginia Human Relations Act, (4) the Family and Medical Leave Act of 1993, (5) defamation, (6) invasion of privacy (public disclosure of private facts), (7) tortious interference, (8) intentional infliction of emotional distress, (9) wrongful discharge, and (10) the Federal Railroad Safety Act. ECF No. 93. As noted above, this Order specifically addresses Plaintiffs' wrongful discharge claim.

## II. LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

West Virginia generally follows the common law rule that an employer can terminate an employee at will without explanation. *See Herbert J. Thomas Mem'l Hosp. Ass'n v. Nutter*, 795

S.E.2d 530, 540–41 (W. Va. 2016); *Harless v. First Nat'l Bank in Fairmont*, 246 S.E.2d 270, 275 (W. Va. 1978). However, the Supreme Court of Appeals of West Virginia in *Harless* recognized that when "the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge." 246 S.E.2d at 275. To prevail on a wrongful discharge claim, a plaintiff must show that a substantial public policy exists. *Wounaris v. W. Va. State Coll.*, 588 S.E.2d 406, 413 (W. Va. 2003).

In this case, the Court finds that the Plaintiffs have failed to identify a substantial public policy upon which a *Harless* action may lie. Plaintiffs argue that "Plaintiffs were terminated for seeking medical treatment from an approved provider," and that such termination "violates numerous rights" including the Rehabilitation Act, the Family Medical Leave Act, and the Federal Railroad Safety Act. *Pls.' Resp.* 24. Additionally, they argue that "West Virginia also recognizes a public policy of encouraging and facilitating the best medical care possible to its residents." *Id.* (citing W. Va. Code § 55-7B-1). They posit that,

> [d]espite the clear public policy encouraging the best possible medical treatment for all residents of the state, CSX went so far as to terminate each Plaintiff for seeing a medical provider. It then went one step further and notified each terminated employee that they could no longer seek treatment from Drs. Johnson or Carey.

*Id.* at 25.

First, this Court has previously held that *Harless* wrongful discharge claims are only appropriate "when no other private cause of action could enforce the public policy at issue." *Adkins v. Cellco P'ship, Inc.*, No. CV 3:17-2772, 2017 WL 2961377, at *4 (S.D.W. Va. July 11, 2017); *see Talley v. Caplan Ind., Inc.*, No. CV 2:07-0067, 2007 WL 634903, at *2 (S.D.W. Va. Feb. 26, 2007) (holding that plaintiff wrongful discharge claim cannot be advanced where the statute providing the relevant public policy allows for a private cause of action). The Rehabilitation Act,

the Family Medical Leave Act, and the Federal Railroad Safety Act all allow for a private cause of action, and consequently, Plaintiffs cannot use a *Harless* action to remedy a violation of those substantial public policies. *See Adkins*, 2017 WL 2961377, at *4.

Second, the Court finds that West Virginia Code § 55-7B-1 is not a recognized substantial public policy that the Plaintiffs may use to pursue their wrongful discharge claim. Section 55-7B-1 is the codification of West Virginia's Medical Professional Liability Act ("MPLA"). The MPLA governs medical malpractice and medical professional liability. While § 55-7B-1 states that "[t]he citizens of this state are entitled to the best medical care and facilities available," this declaration cannot be read as a stand-alone policy unrelated to the greater context of the MPLA. As such, this provision is irrelevant to Plaintiffs' case, because Plaintiffs are not asserting a claim against medical providers based on the provision of medical care. Additionally, even if the MPLA was somehow relevant, the Court agrees with the Defendants that Plaintiffs have failed to point to any legal authority allowing a wrongful discharge claim under this statutory provision or public policy. *See Defs.' Reply* 17.

Accordingly, the Court finds that Plaintiffs have failed to establish that a substantial public policy exists to support their wrongful discharge claim. *See Wounaris*, 588 S.E.2d at 413. Without such a showing, their wrongful discharge claim must be dismissed.

## IV. CONCLUSION

The Court **GRANTS, in part,** Defendants' Motion for Summary Judgment. Plaintiffs' wrongful discharge claim is **DISMISSED**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: July 30, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE