IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JUSTIN ADKINS, et al.,

          Plaintiffs,

v.                                        CIVIL ACTION NO. 3:18-0321

CSX TRANSPORTATION, INC., et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion for Summary Judgment, ECF No. 360. Defendants filed a "Memorandum of Law in Support of Defendants' Motion for Summary Judgment Regarding Invasion of Privacy" ("*Defs.' Mem.*"). ECF No. 366. Plaintiffs filed a response in opposition ("*Pls.' Resp.*"), ECF No. 400, and Defendants filed a reply memorandum ("*Defs.' Reply*"), ECF No. 411. This issue is now ripe for consideration, and for the reasoning provided herein, Defendants' Motion is **GRANTED**, **in part**, Plaintiffs' invasion of privacy claim is **DISMISSED**.[1]

**I.   BACKGROUND**

Each of the 56 Plaintiffs in this case were employees of CSX Transportation ("CSXT"). Between May and July of 2017, all of the Plaintiffs visited one of two chiropractors—Shannon M. Johnson, D.C. ("Dr. Johnson") or Daniel J. Carey, II, D.C. ("Dr. Carey"). *COII*, ECF No. 378 at 2–78. The chiropractors placed all of the Plaintiffs on medical restrictions and signed a Certificate

---

[1] Because of the unusually large size of the Plaintiff class in this case, Defendants have filed one "master" motion for summary judgment and multiple individual memoranda as to each of the counts they seek a ruling upon. The Court finds that a single order addressing all of the arguments would be unwieldy and unpractical. Accordingly, the Court will issue separate orders on the individual counts.

of Illness and Injury ("COII")[2] for each of them. *Id.* All of the COII listed soft-tissue injuries to the back, neck, or shoulder, and all but one of the injuries complained of occurred when the Plaintiffs were off duty. *Id.* Each of the COII indicated that the Plaintiffs should remain off work for eight or more weeks. *Id.*

Dr. Craig Heligman, MD is the Chief Medical Officer for CSXT. Defendants assert that he became suspicious of the Plaintiffs and their chiropractors after he "noticed the number of COIIs submitted within weeks of each other from the same two providers, and their close similarity." *Defs.' Mem.* 2. Dr. Heligman penned a letter to the Railroad Retirement Board ("RRB") encouraging it to start an investigation into potentially "fraudulent practices on the part of both employees and these two providers." *July 14, 2017 Letter*, ECF No. 370-2. That letter was forwarded to Aetna, Inc; Highmark Blue Cross Blue Shield; United Health Care; the Ohio State Chiropractic Board; and the Kentucky Board of Chiropractic Examiners. *Id.* Attached to the letter was a list of CSXT employees who had submitted COII from Drs. Johnson and Carey, their employee identification numbers, dates of treatment, and the conditions for which they sought treatment. *Id.*

Shortly after this letter was sent, pursuant to the Plaintiffs' Collective Bargaining Agreements, Plaintiffs were notified in writing of the charges against them. *See CBA Agreement*, ECF No. 360-56, at 48; *Charge Letters*, ECF No. 360-1. The "charge letters" notified the Plaintiffs that a formal investigation was to be held, and informed them that

> [t]he purpose of this investigation was to develop facts and place your responsibility, if any, in connection with information received on July 14, 2017

---

[2] A COII is the form CSXT requires an employee's medical provider to complete before an employee can be taken off work for an illness or injury. *Defs.' Mem.* 2. The form includes basic identifying information about the employee and has places for the medical professional to document his or her findings, diagnoses, treatment plan, the employee's duration of care with the provider, and the time frame in which the employee is unable to work.

>from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

*Charge Letters*.

Investigative hearings were held for each of the Plaintiffs where they had the benefit of a union representative and were given an opportunity to introduce evidence on their own behalf. *See Hearing Trs.*, ECF No 356-62–117.

At those hearings, Defendants introduced both the letter written by Dr. Heligman and the COII forms that were submitted by the Plaintiffs. *Defs.' Mem.* 11. By Defendants' own admission, at least one hearing, some of the introduced COII contained unredacted information including dates of birth and social security numbers. *Id.; see, e.g.*, *Christian Hearing Tr.* 19–22, ECF No. 270-74.

On August 23, 2017, the Vice President of Labor Relations Zachery Jones sent a letter to at least 14 Plaintiffs recognizing that "[d]uring the hearing, there were a few documents introduced into evidence that may have contained the social security numbers of a few employees." *Confidentiality Letters*, ECF No. 360-8. The letters stated that "[t]his is a reminder that any documents or exhibits introduced during these hearings are company property. While you may have received copies of these documents in the normal course of business and as part of your employment with the company, you remain obligated to keep this information confidential." *Id.* The letters do not identify whose personal information was disclosed.

On February 2, 2018, Plaintiffs filed a lawsuit alleging that the Defendants were liable for violating federal and state laws and for committing multiple torts. *See* ECF No. 1. The now operative Third Amended Complaint includes the following counts: (1) the Employment Retirement Income Security Act of 1974, (2) the Rehabilitation Act, (3) the West Virginia Human

Relations Act, (4) the Family and Medical Leave Act of 1993, (5) defamation, (6) invasion of privacy (public disclosure of private facts), (7) tortious interference, (8) intentional infliction of emotional distress, (9) wrongful discharge, and (10) the Federal Railroad Safety Act. This Order specifically addresses Plaintiffs' invasion of privacy claim.

## II. LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

The tort invasion of privacy can take one of four forms under West Virginia law: "(1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that

unreasonably places another in a false light before the public." *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 83 (W. Va. 1983) (adopting the Restatement (Second) of Torts analysis for invasion of privacy).

> In order to establish a cause of action for public disclosure of private facts, a plaintiff would need to prove the following elements: (1) that there was a public disclosure by the Defendant of facts regarding the Plaintiff; (2) that the facts disclosed were private facts; (3) that the disclosure of such facts is highly offensive and objectionable to a reasonable person of reasonable sensibilities; and (4) that the public has no legitimate interest in the facts disclosed.

*Davis v. Monsanto Co.*, 627 F. Supp. 418, 421 (S.D.W. Va. 1986).

Plaintiffs' Third Amended Complaint alleges that Defendants invaded their privacy by publicly disclosing private facts. *Third Am. Compl.* ¶¶ 2313–21. Specifically, Plaintiffs allege that "Defendants' public disclosure of Plaintiffs' social security numbers, private medical information, and other personal information constitute private, personal, and sensitive information, the disclosure of which was highly offensive and objectionable to reasonable persons of reasonable sensibilities." *Id.* at ¶ 2315.

Plaintiffs argue that the letters sent by Dr. Heligman to the RRB, Plaintiffs' benefit providers, and the chiropractic boards contained Plaintiffs' names, employee ID numbers, and medical conditions. *Pls.' Resp.* 4. Additionally, Plaintiffs submit that at each of the investigative hearings, Defendants submitted a copy of the all the Plaintiffs' COII forms. *Id.* At least some of the disclosed records contained unredacted personal information of some Plaintiffs (such as their social security numbers and dates of birth). *Id.* at 4–5; *see Confidentiality Letters*; *see, e.g.*, *Adkins Hearing Tr.* 10, ECF No. 370-62 (showing admission of COII forms at hearing); *Christian Hearing Tr.* 19–22 (Representative Sandburg objecting to distribution of COII forms and prior disclosure of social security numbers and dates of birth).

In this case, the Court finds that Plaintiffs have failed to raise a material question of fact regarding the first element of the tort, public disclosure. The kind of publication required to establish public disclosure of private facts is not "mere communication to a third party," but rather "widespread publicity." *Davis*, 627 F. Supp. at 421; *see Mays v. Marshall Univ. Bd. of Governors*, No. 14-788, 2015 WL 6181508, at *6 (W. Va. Oct. 20, 2015) ("'Publicity,' in the context of invasion of privacy, entails that disclosure be widespread and not limited to a single person or a small group of people."); Restatement (Second) of Torts § 625D, cmt. a (1977) ("'Publicity' . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."). Typical examples of public disclosure include newspaper publications, radio broadcasts, and statements to large audiences. Restatement (Second) of Torts § 625D, cmt. a.

While some of the Defendants' alleged disclosures may be considered objectionable, the Court has no basis to find that any of the disclosures were sufficiently widespread to be actionable. Plaintiffs have not even attempted to quantify the number of people who viewed the Plaintiffs' information. Based on the parties' exhibits, the Court can surmise that Dr. Heligman's letter was sent to five individuals. *July 14, 2017 Letter*. Moreover, based on the Defendants' "Confidentiality Letters" the Court can concluded that *some* unredacted COIIs were disseminated to approximately 14 Plaintiffs. [3] *See Confidentiality Letters*. These estimations are not sufficient to raise a material question of fact about widespread publication.

---

[3] Significantly, neither party makes any attempt to name which Plaintiffs' information was left unredacted. As such, there is no way for the Court to conclude whose information was disseminated. While one transcript, which was not identified by the Plaintiffs, suggests that the dates of birth and social security numbers of Plaintiff Donald Ste[phens], Plaintiff Jonathan Jeffers, Plaintiff James Blai[n], and five other unnamed individuals' information were disseminated at Plaintiff Matthew Woods's Hearing, *see Woods Hearing* 9–10, ECF No. 370-116, this is plainly insufficient to find that the Plaintiffs as a whole had their information publicized, let alone publicly.

Moreover, to the extent the Plaintiffs base their claim on the introduction of the redacted COII at the Plaintiffs investigatory hearings, even if there were enough individuals present at the hearings to consider the publication widespread, the Court finds that Defendants are entitled to qualified privilege. In *Crump v. Beckley Newspapers, Inc.*, the West Virginia Supreme Court held that "[a] qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter." 320 S.E.2d at 78 (quoting *Swearingen v. Parkersburg Sentinel Co.*, 26 S.E.2d 209, 215 (W. Va. 1943)). This privilege is available as a bar to liability in an invasion of privacy claim. *Id.* at 83; *Taylor v. W. Va. Dep't of Health & Hum. Res.*, 788 S.E.2d 295, 315 (W. Va. 2016).

Here, Plaintiffs have offered no compelling argument to rebut Defendants' claim that the redacted COII were disclosed only to individuals who had a legitimate interest in the information therein. While Plaintiffs argue that "there is no reason one employee needs to know about the conditions and treatment plan of another employee in the context of a disciplinary hearing for alleged fraud," *Pls.' Resp.* 6, the information contained in the redacted COII was clearly relevant to each individual investigation because the very basis of the Defendants' suspicions was the curiously similar nature of the more than 56 COII submitted by Drs. Carey and Johnson. Plaintiffs undoubtedly had an interest in understanding the allegations of fraud that had been levied against them, as did the CSXT employees who were charged with conducting the investigations and making determinations about the Plaintiffs' conduct. Because there is no evidence that those disclosures were made in bad faith, qualified privilege attaches, and Defendants may not be held liable for publication of the COII at the investigative hearings.

## IV. CONCLUSION

Accordingly, the Court **GRANTS**, **in part**, Defendants' Motion for Summary Judgment. Plaintiffs' invasion of privacy claim is **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:   August 2, 2021

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE