IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JUSTIN ADKINS, et al.,

          Plaintiffs,

v.                                                         CIVIL ACTION NO. 3:18-0321

CSX TRANSPORTATION, INC., et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion for Summary Judgment, ECF No. 360. Defendants filed a "Memorandum of Law in Support of Defendants' Motion for Summary Judgment as to Plaintiffs' Intentional Infliction of Emotional Distress Claim" ("*Defs.' Mem.*"). ECF No. 365. Plaintiffs declined to file a responsive memorandum.[1] For the reasoning provided herein, Defendants' Motion is **GRANTED**, **in part**. Plaintiffs' intentional infliction of emotional distress claim is **DISMISSED**.[2]

I. **BACKGROUND**

Each of the 56 Plaintiffs in this case were employees of CSX Transportation ("CSXT"). Between May and July of 2017, all of the Plaintiffs visited one of two chiropractors—Shannon M. Johnson, D.C. ("Dr. Johnson") or Daniel J. Carey, II, D.C. ("Dr. Carey"). *COII*, ECF No. 378 at 2–78. The chiropractors placed all of the Plaintiffs on medical restrictions and signed a Certificate

---

[1] Defendants nevertheless filed a reply memorandum. ECF No. 414.
[2] Because of the unusually large size of the plaintiff class in this case, Defendants have filed one "master" motion for summary judgment and multiple individual memoranda as to each of the counts they seek a ruling upon. The Court finds that a single order addressing all of the arguments would be unwieldy and impractical. Accordingly, the Court will issue separate orders on the individual counts.

of Illness and Injury ("COII")[3] for each of them. *Id.* All of the COII listed soft-tissue injuries to the back, neck, or shoulder, and all but one of the injuries complained of occurred when the Plaintiffs were off duty. *Id.* Each of the COII indicated that the Plaintiffs should remain off work for eight or more weeks. *Id.*

Dr. Craig Heligman, MD is the Chief Medical Officer for CSXT. Defendants aver that he became suspicious of the Plaintiffs and their chiropractors after he "noticed the number of COIIs submitted within weeks of each other from the same two providers, and their close similarity." *Defs.' Mem.* 2. Dr. Heligman penned a letter to the Railroad Retirement Board ("RRB") encouraging it to start an investigation. *July 14, 2017 Letter*, ECF No. 370-2. That letter was forwarded to the Plaintiffs' medical benefits providers (Aetna, Inc; Highmark Blue Cross Blue Shield; and United Health Care), the Ohio State Chiropractic Board, and the Kentucky Board of Chiropractic Examiners. *Id.*

Shortly after this letter was sent, pursuant to their Collective Bargaining Agreements, Plaintiffs were notified in writing of the charges against them. *See CBA Agreement*, ECF No. 360-56, at 48; *Charge Letters*, ECF No. 360-1. The "charge letters" notified the Plaintiffs that a formal investigation was to be held, and informed them that

> [t]he purpose of this investigation was to develop facts and place your responsibility, if any, in connection with information received on July 14, 2017 from the CSXT Chief Medical Officer that you were dishonest and attempted to defraud the Company and/or benefits providers when you, as well as more than 50 other craft employees, submitted potentially fraudulent documentation, and all circumstances relating thereto.

*Charge Letters*.

---

[3] A COII is the form CSXT requires an employee's medical provider to complete before an employee can be taken off work for an illness or injury. *Defs.' Mem.* 2. The form includes basic identifying information about the employee and has places for the medical professional to document his or her findings, diagnoses, treatment plan, the employee's duration of care with the provider, and the time frame in which the employee is unable to work.

Investigative hearings were held for each of the Plaintiffs where they had the benefit of union representation and were given an opportunity to introduce evidence on their own behalf. *See Hearing Trs.*, ECF No 370-61–116.

After the hearings, the Defendants concluded that the Plaintiffs had violated Operating Rule 104.2 and the CSX Code of Ethics.[4] *See Termination Letters*, ECF No. 360-7. Accordingly, all of the Plaintiffs were terminated. *Id.* Plaintiffs had the opportunity to appeal their terminations, and of those who took that opportunity, four were reinstated. *Public Law Board Decisions*, ECF No. 360-6.

On February 2, 2018, Plaintiffs filed a lawsuit alleging that the Defendants were liable for violating federal and state laws and for committing multiple torts. *See* ECF No. 1. The now operative Third Amended Complaint includes the following counts: (1) the Employment Retirement Income Security Act of 1974, (2) the Rehabilitation Act, (3) the West Virginia Human

---

[4] As explained at the Plaintiffs' hearings, Operating Rule 104.2 states that "Employee behavior must be respectful, courteous. Employees must not be any of the following: . . . [d]ishonest." *See, e.g.*, *Barker Hearing Tr.* 11, ECF No. 370-67.
The pertinent parts of the Code of Ethics were also read during the hearings:

> Integrity, Transparency, and Respect. The basics of ethical behavior aren't complicated, but business situations can be.
> . . .
> Who must follow our Code? Everyone in all levels of our Company has a responsibility to know and follow our Code including all employees and officers of CSX and its wholly owned subsidiaries.
> . . .
> Accountability of a bad decision can result in serious harm to employees in our Company. Violations of our Code or Company policies may result in disciplinary action up to and including termination of employment.
> . . .
> Fraud and theft are crimes that can cause lasting damage to our reputation as well as our bottom line. Fraud and theft are completely contrary to our culture and core values. We do not tolerate this activity under any circumstance by anyone working at or on behalf of CSX. Fraud is an intentional misrepresentation of fact that deceives or is intended to deceive another individual or entity for financial or personal gain. Fraud can take form of offering false or fictitious information, reports, or claims to another person. It also includes taking unfair advantage of someone either through manipulation, concealing something, misusing inside information, or misrepresenting facts. Some examples of workplace fraud may include misrepresentation of time sheets or expense reports, abusing or misusing Company equipment, material, property, or credit cards[, and] dishonest accounting practices.

*Id.* at 11–12.

Relations Act, (4) the Family and Medical Leave Act of 1993, (5) defamation, (6) invasion of privacy (public disclosure of private facts), (7) tortious interference, (8) intentional infliction of emotional distress, (9) wrongful discharge, and (10) the Federal Railroad Safety Act. This Order specifically addresses Plaintiffs' intentional infliction of emotional distress claim.

## II. LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

Under West Virginia law, to prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with

>   the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Lab'ys, Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998). "Whether the alleged conduct may be reasonably considered outrageous is a threshold question for the court; whether the conduct is in fact outrageous is a question for the jury." *Radford v. Hammons*, No. 2:14-cv-24854, 2015 WL 738062, at *5 (S.D.W. Va. Feb. 20, 2015) (quoting *Gilco v. Logan Cnty. Comm'n*, No. 11-cv-0032, 2012 WL 3580056, at *5 (S.D.W. Va. Aug. 17, 2012)) (internal quotations omitted).

Count VIII of Plaintiffs' Third Amended Complaint states that the Defendants' "actions, as alleged herein, are atrocious, utterly intolerable in a civilized community, and are so extreme and outrageous as to exceed all possible bounds of decency." *Third Am. Compl.* ¶ 2331. Yet, it is unclear which of the Defendants' actions Plaintiffs' Complaint intended to implicate. Defendants assert that "Plaintiffs' depositions . . . reveal that Plaintiffs' claims of emotional distress are based on no more than Defendants' investigations into suspected improprieties and the termination of Plaintiffs[] from their employment from CSXT." *Defs.' Mem.* 9 (citing *Craycraft Dep.* 97, ECF No. 370-20;[5] *Demonstrative Ex. 5*, ECF No. 360-65).

Plaintiffs declined the opportunity to respond to Defendants' Motion, and in doing so, have failed to rebut Defendants' evidence showing that Plaintiffs' intentional infliction of emotional

---

[5] Q. How did CSX inflict emotional distress on you?
A. They terminated me from my employment.
Q. Any other conduct other than terminating you?
. . .
A. I don't --- I don't think so.
Q. How did Dr. Heligman inflict emotional distress on you?
. . .
A. Charged me with fraud.

distress claims are based solely on the Defendants' investigation into and termination of the Plaintiffs. *See* Fed. R. Civ. P. 56(e).[6]

The West Virginia Supreme Court of Appeals has expressly held that distress that results from being terminated by an employer cannot be used to sustain a claim of intentional infliction of emotional distress. *See* Syl. pt. 2, *Dzinglski v. Weirton Steel Corp.*, 445 S.E.2d 219, 221 (W. Va. 1994). An employee may, however, assert a claim for intentional infliction of emotional distress, if "the employee's distress results from the outrageous manner by which the employer effected the discharge." *Id.*

Thus, without a showing that Defendants conducted the investigations or terminations in an outrageous manner, Plaintiffs' claim cannot survive. Here, Defendants submit that they provided the Plaintiffs with fair and impartial investigations, as required by the Plaintiffs' collective bargaining agreements ("CBAs"). Pursuant to the CBAs, Defendants issued charge letters requesting that Plaintiffs attend the formal investigative hearings. *See Charge Letters*. The Plaintiffs were provided notice that they could present evidence and witnesses and that they were entitled to union representation. *Id.* Those hearings were duly held, *Hearing Trs.*, and Defendants ultimately concluded that Plaintiffs had violated CSXT's Operating Rules and Code of Ethics. *Termination Letters*.

While Plaintiff's Third Amended Complaint includes some statements that could be read as *allegations* that the Defendants, and specifically Dr. Heligman, had already made up their minds about the Plaintiffs' actions and thus that the investigations were not impartial,[7] Plaintiffs' Third

---

[6] Federal Rule of Civil Procedure 56(e) provides that "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."

[7] Throughout the First Amended Complaint Plaintiffs allege:
 1. "The formal disciplinary investigation revealed that Dr. Heligman had decided, without any evidence, that any and all CSX/CSXT employees who had been treated by [Drs. Carey or Johnson],

Amended Complaint alone cannot rebut Defendants' evidence that the investigations were conducted in accordance with Plaintiffs' CBAs and that the terminations were handled in a civil manner. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion."); *Celotex Corp.*, 477 U.S. at 324 ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is genuine issue for trial.'"). Accordingly, the Court finds that Plaintiffs have failed to establish genuine issues of material fact such that this claim should be submitted to a jury.

Additionally, even if the Plaintiffs had established a material question of fact regarding the Defendants' conduct, the Court finds that the Defendants are entitled to qualified privilege. West Virginia recognizes qualified privilege as a potential bar to liability for intentional infliction of emotional distress claims. *See Dzinglski*, 445 S.E.2d at 227–28. "[A] defendant's conduct is subject to a qualified privilege when he acts to protect or advance his own legitimate interest, the

---

had engaged 'in a concerted effort to defraud' CSX/CSXT, the Railroad Retirement Board, and supplemental insurance providers." *See, e.g.*, *Third Am. Compl.* ¶ 22.
2. "… Dr. Heligman stated that he did not doubt the injuries claimed by the employees or the validity of the documents provided by the doctors, but without evidence, that he doubted the motivation behind the submitted medical documentation. *See, e.g.*, *Third Am. Compl.* ¶ 31.
3. "Through his testimony during the disciplinary investigation, Dr. Heligman confirmed that he had no proof that [each Plaintiff] or any of the employees went to Drs. Johnson or Carey for any improper purpose." *See, e.g.*, *Third Am. Compl.* ¶ 35.
4. "Dr. Heligman did not personally examine or treat [Plaintiffs] or any of the other CSX/CSXT employees." *See, e.g.*, *Third Am. Compl.* ¶ 37.
5. "According [to] CSX/CSXT, the purpose of the formal disciplinary investigation of [each Plaintiff] was to 'develop the facts and place … responsibility, if any' yet more than a month before [each Plaintiff's] investigation, Dr. Heligman had already written to the RRB and other benefit providers to declare his belief that these employees had committed fraud." *See, e.g.*, *Third Am. Compl.* ¶ 46.

Each of these statements was repeated in the "Summary of Action" for each Plaintiff.

legitimate interest of others or the legitimate interests of the public." *Id.* (citing *Crump v. Beckley Newspapers*, 320 S.E.2d 70, 78–79 (W. Va. 1983)).

Here, the Defendants[8] acted in furtherance of their legitimate interest of investigating and preventing employee fraud and are therefore shielded from liability by qualified privilege. *See id.* ("Such a finding is consistent with the *Crump* proposition that a qualified privilege attaches to actions designed to protect the defendant's legitimate interest, such as, in this case, when a company is informed that one of its own management employees may be engaged in improper conduct.").

### IV. CONCLUSION

Accordingly, the Court **GRANTS**, **in part**, Defendants' Motion for Summary Judgment. Plaintiffs' intentional infliction of emotional distress claim is **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: August 2, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[8] The Court notes that the individual Defendants named in the Third Amended Complaint were all CSXT employees who either supervised the Plaintiffs or played a role in the investigations and/or disciplinary proceedings. *See Third Am. Compl.* ¶¶ 6–10, 11.