IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JUSTIN ADKINS, et al.,

          Plaintiffs,

v.                                   CIVIL ACTION NO. 3:18-0321

CSX TRANSPORTATION, INC., et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion for Summary Judgment, ECF No. 360. Defendants filed a "Memorandum of Law in Support of Their Motion for Summary Judgment as to Plaintiffs' Claim Under the FRSA" ("*Defs.' Mem.*"). ECF No. 364. Plaintiffs filed a response in opposition ("*Pls.' Resp.*"), ECF No. 396, and Defendants filed a reply memorandum ("*Defs.' Reply*"), ECF No. 417. On August 5, 2021, the Court heard oral arguments on the viability of Plaintiffs' claim under the Federal Railroad Safety Act. This issue is now ripe for consideration, and for the reasoning provided herein, Defendants' Motion is **GRANTED**, **in part**, and Plaintiffs' Federal Railroad Safety Act claim is **DISMISSED**.[1]

**I. BACKGROUND**

Each of the Plaintiffs in this case were employees of CSX Transportation ("CSXT").[2] Between May and July of 2017, all of the Plaintiffs visited one of two chiropractors—Shannon M.

---

[1] Because of the unusually large size of the Plaintiff class in this case, Defendants have filed one "master" motion for summary judgment and multiple individual memoranda as to each of the counts they seek a ruling upon. The Court finds that a single order addressing all of the arguments would be unwieldy and unpractical. Accordingly, the Court will issue separate orders on the individual counts.

[2] To date, the docket indicates that there are fifty-six Plaintiffs in this case. However, at the motions hearing held by the Court on August 5, 2021, the parties indicated that six of those Plaintiffs have settled with the Defendants.

Johnson, D.C. ("Dr. Johnson") or Daniel J. Carey, II, D.C. ("Dr. Carey"). *COII*, ECF No. 378 at 2–78. The chiropractors placed all of the Plaintiffs on medical restrictions and signed a Certificate of Illness and Injury ("COII")[3] for each of them. *Id.* All of the COII listed soft-tissue injuries to the back, neck, or shoulder. *Id.* Each of the COII indicated that the Plaintiffs should remain off work for eight or more weeks. *Id.*

CSXT's Chief Medical Officer, Dr. Craig Heligman, "noticed the high number of COIIs submitted within weeks of each other from the same two providers, and their close similarity." *Defs.' Mem.* 3. He became concerned that they were improperly submitted. *Id.* "As a result of his opinion that these employees may be attempting to fraudulently obtain extended benefits, Dr. Heligman notified the Railroad Retirement Board ("RRB") Office of Inspector General by letter and requested an investigation because 'the timing of these alleged injuries . . . is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers.'" *Id.*; *July 14, 2017 Letter*, ECF No. 370-2. That letter was also sent to Plaintiffs' medical benefits providers and the chiropractic board of Ohio and Kentucky. *July 14, 2017 Letter*.

Soon after Dr. Heligman wrote his letter to the RRB, Plaintiffs received "charge letters" informing them that they were "being held out of service" pending a formal investigation into their conduct. *Charge Letters*, ECF No. 360-1. Plaintiffs were informed that formal investigative hearings would be held at which they could be represented by a union representative in accordance with their collective bargaining agreements and that they could present witnesses in their defense. *Id.*

---

[3] A COII is the form CSXT requires an employee's medical provider to complete before an employee can be taken off work for an illness or injury. *Defs.' Mem.* 2. The form includes basic identifying information about the employee and has places for the medical professional to document his or her findings, diagnoses, treatment plan, the employee's duration of care with the provider, and the time frame in which the employee is unable to work.

Each of the Plaintiffs in this case had a full investigative hearing and the benefit of union representation. *Hearing Trs.*, ECF No. 370-61–116. Defendants ultimately concluded that Plaintiffs had violated CSXT's Operating Rules and Code of Ethics, and they were all terminated from their employment with CSXT. *Termination Letters*, ECF No. 360-7.

After their terminations, Plaintiffs filed OSHA complaints with the United States Department of Labor. *See OSHA Compls*. ECF No. 360-9–55. In their OSHA Complaints, all of the remaining Plaintiffs reported off-duty injuries. *Id.*

On February 2, 2018, Plaintiffs filed a lawsuit alleging that the Defendants were liable for violating federal and state laws and for committing multiple torts. *See* ECF No. 1. The now operative Third Amended Complaint includes the following counts: (1) the Employment Retirement Income Security Act of 1974, (2) the Rehabilitation Act, (3) the West Virginia Human Relations Act, (4) the Family and Medical Leave Act of 1993, (5) defamation, (6) invasion of privacy (public disclosure of private facts), (7) tortious interference, (8) intentional infliction of emotional distress, (9) wrongful discharge, and (10) the Federal Railroad Safety Act.

## II.  LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. ANALYSIS

To state a *prima facie* case under the Federal Railroad Safety Act ("FRSA"), "a plaintiff must project sufficient admissible evidence to establish that: (1) the employee engaged in a protected activity; (2) the employer knew that the employee engaged in the protected activity; (3) the employee suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Conrad v. CSX Transp., Inc.*, 824 F.3d 103, 107 (4th Cir. 2016) (citation and internal quotations marks omitted).

In this case, Plaintiffs have asserted that the Defendants violated two different provisions of the FRSA.[4] The Court believes it is necessary to address the provisions individually.

### A. Hazardous Work Conditions: § 20109(b)

Plaintiffs allege that Defendants violated the FRSA by terminating them for reporting a hazardous safety condition and/or refusing to work based on their physical impairments. *Pls.' Resp.* 8; *Third Am. Compl.* ¶ 2348.

Pursuant to subsection (b) of § 20109,

---

[4] Plaintiffs' Third Amended Complaint implicates a third possible violation of the FRSA under 49 U.S.C. § 20109(a)(4), which forbids railroad carriers taking adverse actions against rail employees who notify or attempt to notify the railroad carrier of a work-related injuries or illnesses. *See Third Am. Compl.* ¶¶ 2350–51. However, at the motions hearing, Plaintiffs confirmed that they are no longer pursuing a cause of action under that provision.

> A railroad carrier engaged in interstate or foreign commerce, or an officer or employee of such a railroad carrier, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for—
>
> (A) reporting, in good faith, a hazardous safety or security condition [or]
>
> (B) refusing to work when confronted by a hazardous safety or security conditions related to the performance of the employee's duties . . . ."

49 U.S.C. § 20109(b)(1)(A)–(B).

The Court agrees with the Defendants and the numerous courts that have held that "hazardous safety or security conditions" are those that relate to the physical conditions of the workplace and that the protections of subsection (b) do not extend to off-duty infirmities or injuries. *See Ziparo v. CSX Transp., Inc.*, 443 F. Supp. 3d 276, 297 (N.D.N.Y. 2020);[5] *Weber v. BNSF Ry. Co.*, No. 4:18-CV-00367-O, 2019 WL 9100375, at *8 (N.D. Tex. Dec. 6, 2019), *aff'd*, 989 F.3d 320 (5th Cir. 2021);[6] *Murdock v. CSX Tranps., Inc.*, No. 3:15-CV-01242, 2017 WL 1165995, at *5 (N.D. Ohio Mar. 29, 2017);[7] *Port Auth. Trans-Hudson Corp. v. Sec'y, U.S. Dep't of Lab.*, 776 F.3d 157, 166 (3d Cir. 2015).[8] As such, Plaintiffs' injuries do not constitute hazardous safety or security conditions under the FRSA. To hold otherwise would unreasonably expand the protections of the FRSA and would essentially grant railroad employees unlimited time off work for injuries and illness, even if those infirmities have no connection to their employment. *See Port Auth. Trans-Hudson Corp.*, 776 F.3d at 162, 167. On this basis alone, Plaintiffs' claims under subsection (b) fail.

---

[5] "'Hazardous safety or security conditions' have generally been found to be physical conditions that are within the control of the rail carrier employer; circumstances outside of the carrier's control and non-work related conditions are not included."

[6] "[S]ubsection (b) does not protect an employee who reports an off-duty infirmity as a hazardous condition."

[7] "The word 'condition' is used throughout subsection (b). It is used relative to 'equipment, track, or structures,' in subsection (b)(2)(B). I, therefore, find Congress did not contemplate 'condition' as used in § 20109(b) to include personal illnesses."

[8] "[W]e think that subsection (b)(1)(A) must be read as having at least some work-related limitation, even though no such limitation appears on the face of the statute."

Furthermore, even if the Plaintiffs' injuries could constitute hazardous safety conditions, the Court finds the claim still fails. As was discussed at the motions hearing, the Court is not convinced that a hazard ever actually existed in this case, because once the Plaintiffs' COII were submitted, CSXT did not ask or require any of the Plaintiffs to work. This is distinguishable both from the classic hazardous conditions cases where the employee noted a pre-existing hazardous condition and the cases Plaintiffs cite where an employee was retaliated against for refusing to work under eminently hazardous conditions. *See, e.g.*, *Ingrodi v. CSX Transp.*, Inc., No. 2020-0030, 2021 WL 1337706 (ARB Mar. 31, 2021) (plaintiff called off a work shift while ill because he believed he could not safely operate a train and would be "a danger to himself and/or co-workers"); *Kurec v. CSX Transp., Inc.*, No. 518CV0670LEKTWD, 2020 WL 6484056, at *13 (N.D.N.Y. Nov. 4, 2020) (plaintiff refused to report to work on a specific occasion while intoxicated because he believed it was unsafe for him to drive).

Lastly, the Court notes that Plaintiffs did not report their injuries as hazardous safety conditions to CSXT. *See Ziparo*, 443 F. Supp. 3d at 296 (noting that to succeed on a claim under § 20109(b)(1)(A) claim "a plaintiff must show that he had a reasonable belief that the activity he was reporting was a hazardous safety or security condition, which requires a showing that the belief was both objectively and subjectively reasonable.").[9] Consequently, Plaintiffs may not use § 20109(b) to contest the legality of their terminations.

## B. Discipline for Following Physician's Orders: § 20109(c)

Plaintiffs also allege that Defendants violated the FRSA by disciplining them "for requesting medical or first aid treatment, or for following orders or a treatment plan of a treating

---

[9] Similarly, Plaintiffs cannot rely on § 20109(b)(1)(B), because that section only protects "refusals" to work if the employee "has notified the railroad carrier of the existence of the hazardous condition and the intention not to perform further work." § 20109(b)(2).

physician." *Pls.' Resp.* 12 (quoting § 20109(c)(2)). Defendants, however, argue that Plaintiffs cannot show that they engaged in a protected activity under subsection (c) "because they were not 'injured during the course of employment.'" *Defs.' Mem.* 15.[10]

Subsection (c) of the FRSA reads as follows:

**(c) Prompt medical attention.**—

> **(1) Prohibition.**--A railroad carrier or person covered under this section may not deny, delay, or interfere with the medical or first aid treatment of an employee who is injured during the course of employment. If transportation to a hospital is requested by an employee who is injured during the course of employment, the railroad shall promptly arrange to have the injured employee transported to the nearest hospital where the employee can receive safe and appropriate medical care.
>
> **(2) Discipline.**--A railroad carrier or person covered under this section may not discipline, or threaten discipline to, an employee for requesting medical or first aid treatment, or for following orders or a treatment plan of a treating physician, except that a railroad carrier's refusal to permit an employee to return to work following medical treatment shall not be considered a violation of this section if the refusal is pursuant to Federal Railroad Administration medical standards for fitness of duty or, if there are no pertinent Federal Railroad Administration standards, a carrier's medical standards for fitness for duty. For purposes of this paragraph, the term "discipline" means to bring charges against a person in a disciplinary proceeding, suspend, terminate, place on probation, or make note of reprimand on an employee's record.

49 U.S.C. § 20109(c).

Notably, subsection (c)(1) expressly prohibits the railroad carrier from denying, delaying, or interfering with the medical treatment of a railroad employee "who is injured during the course of employment." Subsection (c)(2), on the other hand, does not specifically require that the medical treatment sought be for an injury that occurred "during the course of employment."

---

[10] Because the Court dismisses Plaintiffs' claims on the basis that their injuries were not work-related, it declines to address Defendants' argument that § 20109(c) does not apply to medical orders or treatment plans of chiropractors. *See Defs.' Mem.* 18–19.

This Court joins the other courts throughout the country who have analyzed subsection (c)(2) and found that it "applies only to *on-duty* injuries" despite the lack of an explicit limitation in the text. *Grand Trunk W. R.R. Co. v. United States Dep't of Lab.*, 875 F.3d 821, 823 (6th Cir. 2017) (emphasis in original); *see Port Authority Trans-Hudson Corp.*, 776 F.3d at 160; *Williams v. Illinois Cent. R.R. Co.*, No. 3:16-CV-838-CWR-FKB, 2018 WL 716568, at *5 (S.D. Miss. Feb. 5, 2018); *Goad v. BNSF Ry. Co.*, No. 15-00650-CV-W-HFS, 2016 WL 7131597, at *3 (W.D. Mo. Mar. 2, 2016).

Because the scope of subsection (c)(2) is ambiguous, courts have turned to the traditional canons of statutory interpretation to determine the breadth of its protections. *See, e.g.*, *Grand Trunk W. R.R. Co.*, 875 F.3d at 825. For example, in *Grand Trunk*, the Sixth Circuit held that the language and objectives of subsection (c) lead to the conclusion that the (c)(1) and (c)(2) should be read together, as *"*[t]he purpose of subsection (c)(1) is to ensure employees receive prompt medical attention if they are injured on the job," and "the antiretaliation provision, subsection (c)(2), effectuates that purpose by protecting medical treatment for work injuries." *Id.* at 826–27.

Finally, the stated purpose of the FRSA and its legislative history support reading the provisions together. *See id.* at 829–31; 49 U.S.C. § 20101 ("The purpose of this chapter is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents.").

In sum, the Court finds that subsection (c)(2) of the FRSA cannot be read to prohibit the discipline of railroad employees seeking medical treatment for off-duty injuries.[11] Accordingly, Plaintiffs may not use it to vindicate their terminations.

---

[11] Plaintiffs attempt to argue that "[b]ecause CSX did nothing to determine whether the Plaintiffs' musculoskeletal symptomology, and their concurrent treatment with Drs. Johnson or Carey, was in any way work related, and as they have not disclosed any expert on this topic, they have no basis to conclude that Plaintiffs['] musculoskeletal impairments and medical treatment were not work-related." *Pls.' Resp.* 14. Plaintiffs, however, overlook their own

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS, in part,** Defendants' Motion for Summary Judgment. Plaintiffs' Federal Railroad Safety Act claim is **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: August 10. 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

COII forms, OSHA Complaints, and depositions, in which they self-reported off-work injuries. *See COII*; *OSHA Compls.*; *Demonstrative Ex. 7*, ECF No. 360-67 (citing Plaintiffs' deposition testimony regarding the causes and manifestations of their injuries); *see also U.S. Dep't of Labor OSHA Findings*, ECF No. 360-4–5 (dismissing OSHA complaints after noting that Plaintiffs' injuries occurred off-duty).

Additionally, it is Plaintiffs' burden to show evidence that they engaged in a protected activity under the FRSA. While Plaintiffs' expert Dr. Michael Freeman wrote that railway workers commonly sustain musculoskeletal injuries similar to those reported by the Plaintiffs due to the type of work they engage in, *Freeman Rep.* 14, ECF No. 367-5, Plaintiffs failed to produce any evidence showing that *their own* injuries were actually caused by their work.