IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JUSTIN ADKINS, et al.,

        Plaintiffs,

v.                                                                      CIVIL ACTION NO. 3:18-0321

CSX TRANSPORTATION, INC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendants' Motion for Summary Judgment, ECF No. 360, and Plaintiffs' Motion for Partial Summary Judgment, ECF No. 368.[1] For the reasons that follow, the Court **GRANTS** Defendants' Motion, **in part**, and **DENIES** Plaintiffs' Motion, **in part**. Plaintiffs' remaining claims are **DISMISSED**.

**I.  BACKGROUND**

The facts of this case have been restated ad nauseam. Plaintiffs in this case were employees of CSX Transportation ("CSXT"). In a two-month period in mid-2017, each of the Plaintiffs

---

[1] Multiple memoranda submitted by the parties are relevant to the remaining claims including *Defendants' Memorandum of Law in Support of their Motion for Summary Judgment as to Plaintiffs' Claim Under FMLA* ("*Defs.' FMLA Mem.*"), ECF No. 363; *Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment as to Plaintiffs' Claim Under the FMLA* ("*Pls.' FMLA Resp.*"), ECF No. 398; *Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment as to Plaintiffs' Claims Under the FMLA* ("*Defs.' FMLA Reply*"), ECF No. 413; *Plaintiffs' Brief in Support of Plaintiffs' Motion for Partial Summary Judgment* ("*Pls.' Br.*"), ECF No. 369; *Defendant's Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment* ("*Defs.' Resp. in Opp.*"), ECF No. 382; *Plaintiffs' Reply Memorandum in Support of Motion for Partial Summary Judgment* ("*Pls.' Reply in Supp.*"), ECF No. 410; *Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment on Plaintiffs' Claim for Wrongful Discharge and Plaintiffs' Claims Under ERISA, the Rehabilitation Act and the West Virginia Human Rights Act* ("*Defs.' ERISA Mem."*), ECF No. 362; *Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment on Plaintiffs' Claim for Wrongful Discharge and Plaintiffs' Claims Under ERISA, the Rehabilitation Act and the West Virginia Human Rights Act* ("*Pls.' ERISA Resp.*"), ECF No. 397; and *Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment as to Plaintiffs' Claim for Wrongful Discharge and Plaintiffs' Claims Under ERISA, the Rehabilitation Act and the West Virginia Human Rights Act* ("*Defs.' ERISA Reply*"), ECF No. 415.

visited one of two chiropractors in this region, Shannon M. Johnson, D.C. ("Dr. Johnson"), or Daniel J. Carey, II, D.C. ("Dr. Carey"). CSXT's Certificate of Illness and Injury ("COII") was completed for each of the Plaintiffs by their respective chiropractor. The COII for each Plaintiff listed a soft-tissue injury and recommended that each Plaintiff remain off work for eight or more weeks.

Dr. Craig Heligman is the Chief Medical Officer for CSXT. Dr. Heligman "noticed the high number of COIIs submitted within weeks of each other from the same two providers, and their close similarity." *Defs.' FMLA Mem.* 2. He became concerned that they were improperly submitted. *Id.* at 2–3. "As a result of his opinion that these employees may be attempting to fraudulently obtain extended benefits, Dr. Heligman notified the Railroad Retirement Board ("RRB") Office of Inspector General by letter and requested an investigation because 'the timing of these alleged injuries . . . is highly suspicious and suggestive of fraudulent practices on the part of both employees and these two providers.'" *Id.* at 3; *July 14, 2017 Letter*, ECF No. 370-2.[2] That letter was also sent to Plaintiffs' medical benefits providers and the chiropractic board of Ohio and Kentucky. *July 14, 2017 Letter*.

Soon after Dr. Heligman wrote his letter to the RRB, Plaintiffs received "charge letters" informing them that they were "being held out of service" pending a formal investigation into their conduct. *Charge Letters*, ECF No. 360-1. Plaintiffs were informed that formal investigative hearings would be held at which they could be represented by a union representative in accordance with their collective bargaining agreements and that they could present witnesses in their defense. *Id.*

---

[2] While it is not discussed at length in the parties' briefing, the Court has been informed that around the time the COIIs were submitted, CSXT had announced furloughs in the area. *See, e.g.*, *Heligman Dep.* 85, ECF No. 382-1. At the motions hearing, Plaintiffs submitted that approximately half of the Plaintiffs were not subject to the announced reduction in force/furlough.

2

Each of the Plaintiffs in this case had a full investigative hearing, which included testimony by the employee and Dr. Heligman, and the benefit of union representation. *Hearing Trs.*, ECF No. 370-61–116. Defendants ultimately concluded that Plaintiffs had violated CSXT's Operating Rules and Code of Ethics, and they were all terminated from their employment with CSXT. *Termination Letters*, ECF No. 360-7.

On February 2, 2018, Plaintiffs filed a lawsuit alleging that the Defendants were liable for violating federal and state laws and for committing multiple torts. *See* ECF No. 1. The Third Amended Complaint included the following counts: (1) the Employment Retirement Income Security Act of 1974, (2) the Rehabilitation Act, (3) the West Virginia Human Relations Act, (4) the Family and Medical Leave Act of 1993, (5) defamation, (6) invasion of privacy (public disclosure of private facts), (7) tortious interference, (8) intentional infliction of emotional distress, (9) wrongful discharge, and (10) the Federal Railroad Safety Act.

The Court has entered numerous orders pertaining to summary judgment, *see* ECF Nos. 439, 440, 441, 442, 443, 445. To date, the following claims have been dismissed: defamation, invasion of privacy, tortious interference, intentional infliction of emotional distress, wrongful discharge, and the Federal Railroad Safety Act.

On August 5, 2021, the Court held a motions hearing at which the parties had the opportunity to present their arguments on the remaining causes of action. This Order addresses Plaintiffs' claims under the Employment Retirement Income Security Act of 1974 ("ERISA"), the Rehabilitation Act of 1973, the West Virginia Human Relations Act ("WVHRA"), and the Family and Medical Leave Act of 1993 ("FMLA").

## II.  LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. ANALYSIS

**A. FMLA Retaliation, ERISA, WVHRA, Rehabilitation Act**

While the antiretaliation and antidiscrimination provisions of the FMLA, ERISA, WVHRA, and the Rehabilitation Act all provide different protections to employees, claims under these statutory provisions are all analyzed using the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973). *See Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (applying *McDonnell Douglas* to FMLA retaliation claim); *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 238, 239 (4th Cir. 1991) (applying *McDonnell Douglas* to claims under § 510 of ERISA); *Mayflower Vehicle Sys., Inc. v. Cheeks*, 629 S.E.2d 762, 772 (W. Va. 2006) (applying *McDonnell Douglas* to WVHRA claims); *Hannah P. v. Coats*, 916 F.3d 327, 342 (4th Cir. 2019) (applying *McDonnel Douglas* to Rehabilitation Act claims).

4

Under this framework, a plaintiff has the burden of producing evidence of a *prima facie* case of discrimination or retaliation under the relevant statute. *See McDonnell Douglas*, 411 U.S. at 802. If that burden is met, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* Thereafter, the plaintiff has "the burden of persuading the factfinder that the employer's proffered explanation is merely a pretext for discrimination." *Id.* at 804.

Assuming, without deciding, that Plaintiffs have carried their initial burden of producing evidence of a *prima facie* case under each of the pertinent acts, Defendants have provided a consistent "legitimate, nondiscriminatory reason" for terminating the Plaintiffs: CSXT believed the Plaintiffs were seeking time off work on an illegitimate basis, and therefore, that the Plaintiffs were violating CSXT workplace rules. *See Defs.' FMLA Mem.* 7; *Defs.' ERISA Mem.* 7–8. The ultimate burden of persuasion, then, lies with the Plaintiffs. They must at least create a genuine issue of material fact on the issue of pretext to survive summary judgment. *See McDonnell Douglas*, 411 U.S. at 804.

In the end, it does not matter if CSXT was correct when it concluded that the Plaintiffs had violated its Operating Rules and Code of Ethics. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) ("[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."). Accordingly, Plaintiffs must do more than submit "the unexceptional fact" that they disagree with CSXT's final determinations. *Id.; Conkwright*, 933 F.2d at 239 ("[A] plaintiff must adduce facts, which if taken as true, could enable a jury to identify unlawful intent from the other various reasons why an employer might have terminated plaintiff, and to conclude that the employer harbored the requisite

unlawful intent."); *Hannah P.*, 916 F.3d at 345 (reiterating that plaintiff must demonstrate that purposed basis for adverse action was pretext for discrimination under Rehabilitation Act); *Powers v. Covestro LLC*, No. 2:16-CV-05253, 2017 WL 1952230, at *6 (S.D.W. Va. May 10, 2017) ("The plaintiff may not satisfy his burden by merely stating that the defendants' stated reason is pretext and vaguely hinting that sufficient evidence exists to refute the defendants' stated reason.")

Plaintiffs argue that the investigative process was "pre-determined," because by the time Dr. Heligman testified at the hearings, he had already concluded that the Plaintiffs had engaged in fraud. *See Pls.' FMLA Resp.* 15. Additionally, they argue that Dr. Heligman's deposition testimony that the Plaintiffs engaged in "subconscious" fraud, is further indication that he came to his conclusions about the Plaintiffs' guilt without evidence. *Id.* Finally, they argued that not all of the Plaintiffs were subject to furlough, and therefore the Defendants had no reason to believe the conduct of those Plaintiffs was suspicious.

As stated at the hearing, none of these purported facts suggest that CSXT's ultimate reason for firing the Plaintiffs was pretextual. First, Dr. Heligman was not the final decisionmaker in the Plaintiffs' terminations, nor was he the only person who testified during the disciplinary hearings.[3] Accordingly, the final decisionmaker heard more than just Dr. Heligman's opinions, and Plaintiffs have no evidence that the hearing process was somehow pretextual. Second, the Court has been directed to nothing in Dr. Heligman's deposition testimony that suggests the actual reasons for firing the Plaintiffs were pretextual. As the Court stated at the motions hearing, while Dr. Heligman was careful not to literally accuse the Plaintiffs of committing fraud or crimes, it is clear that he believed that the circumstances indicated fraudulent acts. Finally, the Court does not believe

---

[3] Additionally, as Defendants argued at the hearing, a predetermination is not the same thing as pretext. In fact, a finding that the Defendants were convinced from the beginning that Plaintiffs were acting fraudulently would actually strengthen Defendants' argument that they terminated Plaintiffs for that reason.

Plaintiffs' argument that not all the Plaintiffs were subject to furlough is evidence of pretext. Even without the furlough notice, the Defendants had sufficient reason to believe that the Plaintiffs were improperly seeking leave.

In sum, Plaintiffs have failed to produce any evidence to suggest that Defendants terminated the Plaintiffs for any purpose other than the Defendants' stated legitimate reason. Therefore, Plaintiffs are unable to carry their burden of showing they were terminated for pre-textual reasons under any of the relevant statutory provisions. As such, the Defendants are entitled to summary judgment on Plaintiffs' FMLA Retaliation, ERISA, West Virginia Human Rights Act, and Rehabilitation Act claims.

## B. FMLA Interference[4]

In addition to prohibiting retaliation for the exercise of FMLA rights, the FMLA prohibits employers from interfering with the same. "Claims of alleged violations of these prescriptive rights—known as 'interference' or 'entitlement' claims—arise under 29 U.S.C.A. § 2615(a)(1), which states that '[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.'" *Yashenko v. Harrah's NC Casino Co.*, LLC, 446 F.3d 541, 546 (4th Cir. 2006).

To prevail on an interference claim, an employee must show "(1) that he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit, and (3) that

---

[4] Plaintiffs argue that Defendants did not move for summary judgment on this claim. *Pls.' FMLA Resp.* 2. Defendants plainly noted in their Motion that summary judgment was proper on Plaintiffs claims of "denial of benefits and interference under the Family Medical Leave Act of 1993." *Mot.* 1–2. Additionally, Defendants' supporting memorandum expressly, albeit briefly, addresses interference and cites FMLA interference caselaw to support its argument that it did not interfere with Plaintiffs' FMLA rights. *See Defs.' FMLA Mem.* 10. Finally, when the parties appeared before the Court to argue the motions, FMLA interference was addressed at length. At no time did Plaintiffs argue that interference was improperly before the Court. As such, the Court rejects Plaintiffs' submission that the interference claim is not at issue on summary judgment.

interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015).

Plaintiffs argue that Defendants interfered with their FMLA rights by failing to process their requests for leave as FMLA leave. *Pls.' Br.* 3, 7–8, 13. Defendants argue that they did not interfere with Plaintiffs' FMLA rights because they honestly believed Plaintiffs sought leave for an improper purpose. *Defs.' FMLA Mem.* 11–12 (citing *Kariotis v. Navisotar Int'l Transp. Corp.*, 131 F.3d 672, 680–81 (7th Cir. 1997)).

Here, the Court finds that application of the "honest belief" rule is appropriate. While the rule has not been formally adopted by the Fourth Circuit, the Court has alluded to the rule's validity. *See Mercer v. Arc of Prince Georges Cnty, Inc.*, 532 F. App'x 392, 396 (4th Cir. 2013). In *Mercer*, the Fourth Circuit cited *Kariotis* for the proposition that "an employer does not interfere with the exercise of FMLA rights where it terminates an employee's employment based on the employer's honest belief that the employee is not taking FMLA for an approved purpose." *Id.* That is the exact scenario before this Court. Defendants have demonstrated to the Court that they believed the Plaintiffs submitted the COII improperly. That belief need not have been accurate, so long as it was genuine. *See Kariotis*, 131 F.3d at 681. Plaintiffs have failed to produce any evidence or persuasive argument suggesting the Defendants did not honestly believe leave was sought for an improper purpose. As such, the Court finds that Plaintiffs cannot maintain a claim for FMLA interference.

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS, in part,** Defendant's Motion for Summary Judgment. Accordingly, Plaintiff's Motion for Partial Summary Judgment is **DENIED**, **in part**.

8

The Court dismisses Plaintiffs' FMLA, ERISA, West Virginia Human Rights Act, and Rehabilitation Act claims.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTERED: August 23, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE